W. Jack Kalins and W. Jack Kalins, Inc., Petitioners *v.* Commonwealth of Pennsylvania, State Real Estate Commission, Respondent.

Argued September 10, 1985, before Judges ROGERS and PALLADINO, and Senior Judge BLATT, sitting as a panel of three.

*Charles B. Zwally*, with him, *Edwin W. Tompkins, III, Shearer, Mette & Woodside*, for petitioners.

*Steven Wennberg*, Assistant Counsel, with him, *Joyce McKeever*, Chief Counsel, Bureau of Profes-

sional and Occupational Affairs, and *David F. Phifer,* Chief Counsel, Department of State, for respondent.

OPINION BY JUDGE ROGERS, November 6, 1985:

W. Jack Kalins and W. Jack Kalins, Inc. (Kalins) have filed a petition for review of an order of the Pennsylvania State Real Estate Commission fining them jointly the sum $500.00 for violation of the Real Estate Licensing and Registration Act (Act), Act of February 19, 1980, P.L. 15, *as amended,* 63 P.S. §§455.101-455.902.

The petitioner W. Jack Kalins is the owner and broker of record of the petitioner, W. Jack Kalins, Inc; both are licensed Pennsylvania real estate brokers. W. Jack Kalins also owns the stock of Vacation Charters, Ltd. which in turn owns in fee a nine acre tract of land in Monroe County on which is located a building called the Carriage House at Pocono Manor. The Carriage House adjoins the Pocono Manor Inn and Golf Club, a well-known Pocono mountain resort.

Under the name Carriage House at Pocono Manor, Vacation Charters, Ltd. sells rights to occupy for one or more weeks a year during the twelve years following the execution of an agreement a choice of accommodations at the Carriage House. Purchasers may thus acquire the right to use a studio, mini suite or royal suite at the Carriage House for one week a year during the twelve year term of the agreement, with option to renew for ten percent of the original price. The purchaser does not obtain the right to use a particular studio or suite but the right to occupy accommodations of the type chosen designated by Vacation Charters, Inc. There is evidence in the record that the cost of a unit, consisting of one week's use each year for twelve years, ranges from $4,495 to $8,495. The sports and recreational facilities of the Pocono Manor Inn and Golf Club are available to purchasers

of units, some with, some without charge; in addition, purchasers must pay yearly maintenance, membership and club fees.

The purchasers of these variously called, time (or interval) share vacation (or resort), units (or rights), enter into a written agreement with Vacation Charters, Ltd. by which the latter agrees "to make available to the Purchaser the right . . . to reserve for occupancy at the Carriage House . . . for the number of weeks indicated . . . for the next 12 years . . . the type of accommodation designated. . . ." Prospects are also provided a document called Carriage House at Pocono Manor Disclosure Statement which describes some of the terms of a mortgage of the Carriage House property delivered by Vacation Charters, Ltd. to a bank, in which the parties agree that the mortgagor will make sales of "time interval vacation rights . . . transfer[ring] a contract right to use of the mortgaged premises" and that unless the time share purchaser is in default, "no foreclosure . . . shall divest, impair, modify, abrogate and otherwise affect any interests or rights whatsoever of the time interval purchase under said purchaser agreements."

On October 2, 1981, investigators of the Bureau of Professional and Occupational Affairs, a man and a woman, visited Carriage House posing as engaged persons. A man named Palmatessa appeared, identified himself as a sales agent, took the investigators on a tour of the facilities, explained the cost of purchasing units and introduced them to a man named Lancia, whom he identified as the sales manager. Mr. Lancia repeated the sales effort. During the course of these discussions, Mr. Palmatessa told the investigators that the plan of sales of the units had been approved by the Attorney General of Pennsylvania. Messrs. Palmatessa and Lancia were not licensed as real estate salespersons in Pennsylvania.

The petitioners were cited by the Commission for violating a number of the provisions of the Real Estate Licensing and Registration Act. The Commission, after hearing, concluded that the petitioners had violated subsections (a)(1), (a)(15) and (a)(20) of Section 604 of the Act, 63 P.S. §455.604, which make the following conduct punishable:

(a)(1) Making any substantial misrepresentation.

(a)(15) Violating any rule or regulation promulgated by the commission in the interest of the public and consistent with the provisions of this act.

(a)(20) Any conduct in a real estate transaction which demonstrates bad faith, dishonesty, untrustworthiness or incompetency.

As noted, the Commission fined the petitioners jointly $500.00.

The actions which form the basis of this proceeding are (1) the employment by the petitioners, who are licensed real estate brokers, of Messrs. Palmatessa and Lancia, who were not licensed salespersons to sell time share vacation units in Carriage House and (2) the assurance, found by the Commission to be false, given by Mr. Palmatessa to Commission investigators that the time share vacation plan had been approved by the Attorney General of Pennsylvania. With respect to Section 604(a)(1), the Commission concluded that the petitioners made a substantive "misrepresentation to the public, through its salespersons, that such salespersons are licensed to engage in activities for which a real estate sales license is required when, in fact, such individuals are not so licensed." With respect to Section 604(a)(15), the Commission concluded that the petitioners violated its regulation at 49 Pa. Code §35.103 forbidding brokers from making "representa-

tions to give assurances or advice . . . which [is] . . . incorrect, inaccurate or improbable'' by permitting Mr. Palmatessa to tell prospects that the time share plan had been approved by the Pennsylvania Attorney General. With respect to Section 604(a)(20), the Commission concluded that the petitioners demonstrated bad faith, dishonesty or untrustworthiness by employing unlicensed individuals to perform functions for which a real estate salesperson's license was required.

The petitioners' responses are, as to (a)(1) and (a)(20), that no real estate salesperson's license was needed to sell these time share units because at the time of the events the term "real estate,'' to which only the strictures of the Act applied, was defined by Section 201 of the Act, 63 P.S. §455.201 as "[a]ny interest or estate in land . . . including leasehold interests''; that the time share vacation units its unlicensed salespersons were trying to sell were not interests or estates in land; and that its salespersons were not, therefore, acting in the capacity of salespersons for the purpose of Section 301, 63 P.S. §455.301, making it unlawful to act in the capacity of a salesperson of real estate without a license.

The question thus raised is of first instance in Pennsylvania. It may also be of last instance because the Act was amended by the Act of March 29, 1984, P.L. 162, so as to include "time share interests'' within the Act's definition of real estate. The events of this case antedated the amendment.

The petitioners first contend that the Legislature did not intend that time share vacation units should be included in the Act's original definition of real estate and that this intention is evidenced by the Legislature's action amending the Act so as to include them. They urge as authority for this proposition the statement in *Masland v. Bachman*, 473 Pa. 280, 289, 374

A.2d 517, 521 (1977), that "[a] change in the language of a statute ordinarily indicates a change in legislative intent." Neither the text nor the context of that statement gives it persuasive force in this proceeding. The use of the word "ordinarily" shows that it was not to be of unfailing application; and the changes of statutory language to which the aphorism was applied in *Masland* (and the cases cited in *Masland*) are quite different from the mere addition of "time share interests" as constituents of the definition of real estate. In *Masland* the Supreme Court held that the removal by amendment of the exemption of a class of subject from a regulatory Act evinced the Legislature's intent to regulate the class; it did not hold, as the petitioners urge, that the later inclusion of a class by name evinces the Legislature's intention originally to exclude the class under any name. In *Haughey v. Dillon*, 379 Pa. 1, 108 A.2d 69 (1954), the Supreme Court held that the amendment of legislation giving the assigns of owners and lienholders the right to redeem tax sale properties by deleting the reference to lienholders indicated the Legislature's intention that the assigns of lienholders should not thereafter have a right of redemption. In *Commonwealth v. Lowe Coal Co.*, 296 Pa. 359, 145 A. 916 (1929), the Supreme Court held that by a change of language in a statute governing the divestment of taxes due the Commonwealth by judicial sales, the Legislature intended that such sales should be effective thereafter to discharge the Commonwealth's lien only to the extent that its taxes were paid from the proceeds. Finally, in *Olgilvie's Estate*, 291 Pa. 326, 139 A. 826 (1927), the Supreme Court held that a change in Federal statutes relating to the distribution of the proceeds of war risk insurance required that the funds should be distributed as provided in the decedent's will rather than to a class of bene-

ficiaries named in earlier Federal statutes. We repeat, in each of these cases the Legislature either changed the former language of the statute or adopted changed legislation on the subject matter, giving new and inconsistent substance to the old. Here, there was the single addition by name of a novel kind of interest in land come upon the market and requiring regulation.

Moreover, the cases just described would be precedential in this case only upon the assumption that the definition of real estate in the Act before amendment did not already embrace time share interests by the phrases "interest in land" and "leasehold interests"; and that assumption would beg the question.

Real estate was originally defined at Section 201 of the Act, 63 P.S. §455.201, as including "[a]ny interest or estate in land . . . including leasehold interests." As we have earlier noticed, the petitioners' time sharing vacation unit gives the purchaser the right to occupy, depending on the price paid, a studio, or a suite, or a mini suite located in a building called Carriage House for one week a year during twelve years. The right conferred is not to occupy the same studio or suite or mini suite during each term but to occupy a studio or suite or mini suite in Carriage House assigned by the owner. The owner may also, within limits, determine which week within a season the purchaser may use the unit. The petitioners contend that the purchaser does not acquire a leasehold interest or other interest in real estate because Vacation Charters, Ltd. determines which unit is used by the purchaser and to some degree when he may use it. The respondent, State Real Estate Commission contends that the arrangement is a leasehold interest. We agree with the respondent.

The petitioners would have us give a narrow construction to the Real Estate Licensing and Registra-

tion Act. The law requires that it be "liberally construed to effect [its] object." 1 Pa. C. S. §1928(c). A principal purpose of the Act is to protect buyers and sellers of real estate, the most expensive item many persons ever buy or sell, from abuse by persons engaged in the business.

"It is difficult to define a lease in terms which will fit all modern conditions; it may we believe, be accurately defined as a conveyance or grant or demise of certain described land or tenements (usually in consideration of rent or other recompense) for a prescribed period or at will, but for less time than the lessor hath in the premises." *Morrisville Shopping Center, Inc. v. Sun Ray Drug Co.*, 381 Pa. 576, 582, 112 A.2d 183, 186 (1955). "[N]o particular form of words is necessary to constitute a lease and . . . any writing is sufficient which establishes the intention of one party voluntarily to dispossess himself of the premises, for a consideration, and of the other to assume the possession for a prescribed period." *Schweitzer v. Evans*, 360 Pa. 552, 555, 63 A.2d 39 (1949). The writing describing the arrangement in this case sufficiently fits these descriptions. They grant purchasers the right to use a defined tenement for a prescribed period for a stated consideration. That the defined tenement is certain only to the extent that it is located in a certain building only illustrates, as the statement from *Morrisville Shopping Center* recognized, that it is difficult to define a lease in terms which will fit all modern conditions. The arrangement in this case exactly fits Mr. Justice STERN's leaner description of a lease in *Schweitzer* as any writing which establishes the intention of one party to dispossess himself of the premises, for a consideration, and the other to assume the possession for himself.

One of the two existing appellate cases on the subject is *Cal-Am Corp. v. Department of Real Estate,* 104 Cal. App. 3d 453, 163 Cal. Rptr. 729 (1980), where the California Court of Appeals held that a plan quite similar to the petitioners' was a lease because it gave exclusive possession of the premises against all the world, including the owner. The California court was not persuaded, nor are we, by *State Department of Commerce, Division of Real Estate v. Carriage House Association,* 94 Nev. 707, 585 P.2d 1337 (1978), where the Nevada Supreme Court found that no leasehold interest was created because the writing in that case was indefinite as to duration and description of the property.

The petitioners urge that their grants conferred only a license; that is, a "purely personal privilege to live on the land or to do certain acts thereon, but not to exercise exclusive possession and enjoyment for a term specified." *Sparrow v. Airport Parking Authority,* 221 Pa. Superior Ct. 32, 39, 289 A.2d 87, 91 (1972).

In the first place, the petitioners' plan does give the purchaser exclusive possession for a term specified. Nevertheless, the petitioners cite *Baldwin v. Taylor,* 166 Pa. 507, 31 A. 250 (1895), as expressing the proposition that a license does not confer on the licensee an interest in the real estate. The more modern view, however, is that a license is an interest in real estate. Section 5 of the Restatement of Property (1936) defines a license as "an interest in land . . . generally [including] varying aggregates of rights, privileges, powers and immunities and distributively to mean any one of these." Comment c to Section 5 makes the point that if a purchaser has a right, privilege, power or immunity with respect to land he has an interest in it. Section 512 of the Restatement of

Property (1944) defines a license as "an interest in land . . . which (a) entitles the owner of the interest to a use of land, (b) arises from the consent of [the owner], (c) is not an incident to an estate in the land and (d) is not an easement." Comment c to Section 512 provides that "a privilege to use certain land constitutes an interest in that land."

The petitioners' time share vacation units were leasehold interests and interests in land during the events of this case and their sale was within the purview of the Act.

The petitioners next contend that the record does not support the Commission's holding that they violated Sections 604(a)(1), (15) and (20) which, it will be recalled, provide punishment for, respectively, (1) making any substantial misrepresentation, (15) violating a Commission rule or regulation and (20) demonstrating bad faith, dishonesty, untrustworthiness or incompetency in conducting a real estate transaction.

In considering these contentions, we must bear in mind that the petitioners are broker W. Jack Kalins and a broker corporation owned by him and that Mr. Kalin's involvement in these events was to engage two unlicensed persons as salespersons of time share vacation units at a time when the term "real estate" was not defined as explicitly including "time share interests." The Commission explains its conclusion that the petitioners violated Section 604(a)(1) by describing the petitioners' act of engaging unlicensed persons to sell time share interests, as a misrepresentation to the public that they were licensed salespersons. It explains its conclusion that Section 604 (a)(20) was violated in the same fashion; that the petitioners' use of unlicensed salespersons demonstrated bad faith, dishonesty, untrustworthiness or incompetency. We disagree with the Commission's

analysis and its conclusion. As appears by the Commission's and our substantial discussions of whether time sharing interests were leasehold interests or interest in real estate subject to regulation by the Act before its amendment explicitly to include time sharing interests, it was far from clear before the amendment of the Act that the sale of time sharing interests was subject to regulation. It is true that the petitioners mistakenly concluded that the sale of units was not regulated and could be sold by unlicensed salespersons; but a mistake of law, fortunately for those who decide questions of law as a profession, is not a substantial misrepresentation and it does not demonstrate bad faith, dishonesty, untrustworthiness or incompetency.

The Commission's conclusion that the petitioners violated 604(a):(15) was accomplished by imputing to the petitioners the misrepresentation made by one of their salespersons that the time share vacation units had been approved by the Attorney General of Pennsylvania. This, the Commission held, violated its rule at 49 Pa. Code §35.103 stating that "No broker shall make representations to give [for the purpose of giving?] assurances or advice concerning any aspect of a real estate transaction which he knows or should know to be incorrect." The record contains substantial evidence supporting the Commission's finding that the petitioners' unlicensed salesperson gave an assurance which he knew or should have known was incorrect. The petitioners' contention that the failure of the Commission to find that the salespersons were not the petitioners' agents, based on evidence adduced by the petitioners suggesting that they were the employees of another corporation or independent contractors was an arbitrary or capricious disregard of the evidence, is without merit. The salespersons were

surely representing the petitioners in the sale of the latters' time sharing vacation units.

There remains the question of whether the salesperson's conduct may be imputed to the petitioners. Section 702(a) of the Act, 63 P.S. §455.702(a) provides that no violation of any provision of the Act on the part of a salesperson shall be ground for the revocation or suspension of the broker's license unless it shall appear that the broker had actual notice of the violation. This provision does not apply here because the petitioners' licenses were not revoked or suspended; the petitioners were merely fined. Therefore, the salesperson's misrepresentation may be imputed. *Aiello v. Ed. Saxe Real Estate Inc.*, 327 Pa. Superior Ct. 429, 476 A.2d 27 (1984), upon which the petitioners also rely, has been reversed by the Pennsylvania Supreme Court, Pa. , A.2d (No. 59 Middle District Dkt., filed September 24, 1985).

In summary, we hold that the petitioners' sales of time sharing vacation units were acts done in the course of conducting the business of selling real estate; that neither the findings of the Commission nor the evidence supports the Commission's conclusion that the petitioners violated Sections 604(a)(1) or 604(a)(20) of the Act; but that the findings and the evidence support the Commission's conclusion that the petitioners violated Section 604(a)(15) by imputation to them of a salesperson's misrepresentation.

In view of the reduced number of the petitioners' violations and the Commission's expressions of admiration for the clarity and accuracy of the petitioners' sales literature and agreements and its acknowledgement of the petitioners' cooperation with the Commission in its preparation for this proceeding, we will modify the Commission's order by reducing the

fine imposed jointly upon the petitioners to the amount of $100; we affirm the order as so modified.

ORDER

AND Now, this 6th day of November, 1985, the order of the Pennsylvania State Real Estate Commission appealed from is modified by reducing the amount of the fine imposed jointly upon the petitioners to the amount of $100; the order so modified is affirmed.