**MODERN REALTY OF MISSOURI, INC., a Missouri corporation, Plaintiff,**

v.

**SHIVERS & ASSOCIATES, INC., a Georgia corporation; and Harold E. Shivers, Individually; and Key Lime Resort and Marina Club, Inc., a Florida corporation; and Key Lime Vacations, Inc., a Georgia corporation; and Marathon, Ltd., a Georgia limited partnership; and Key Lime Vacations, Inc., a Florida corporation, Defendants.**

No. 95–2401–Civ.

United States District Court, S.D. Florida.

Jan. 30, 1989.

James Wyrsch, Koenigsdorf, Wyrsch & Ramsey, P.A., Kansas City, Mo., Hugh J. Morgan, Morgan, Morgan & Hendrick, P.A., Key West, Fla., for plaintiff.

Karl Beckmeyer, Beckmeyer, Mulick & Wolkowsky, Tavernier, Fla., for defendants.

S. Alan Stanley and Neal B. Shniderman, Blackwell, Walker, Fascell & Hoehl, Miami, Fla., for Marathon Ltd.

## MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

HASTINGS, District Judge.

THIS CAUSE comes before the Court on Defendants' motion for partial summary judgment on Plaintiff's Complaint[1] and Plaintiff's motion for summary judgment on Defendants' Counterclaim. After careful consideration of the motions, responses, replies, memoranda, attachments and being fully advised, the reasoning of the Court is set forth below.[2]

## I. FACTS

The following facts are not in dispute. Plaintiff, Modern Realty of Missouri, Inc. (hereinafter "Modern") brings this action against Defendants Key Lime Vacations, Inc., a Georgia corporation (hereinafter "Georgia"), Marathon, Ltd., a Georgia Limited partnership (hereinafter "Marathon") and Key Lime Resort and Marina Club, Inc., a Florida corporation (hereinafter "Resort"). This Court, on April 14, 1988, ordered dismissal of the claims with prejudice against Defendants Harold E. Shivers (hereinafter "Shivers"), Key Lime Vacations, Inc., a Florida corporation, and Shivers & Associates, Inc. pursuant to a mutual settlement agreement entered by all named parties. (Defendants are sometimes collectively referred to as "Defendants").

The Resort is a fully operational time-share vacation retreat located in Marathon, Florida. In December 1976, Shivers entered into an agreement with Modern whereby Modern was hired to sell time-share interests in the Resort. The agreement provided that Modern would be compensated in the form of a fee in the amount of forty-four percent of the gross selling price of all interests sold. The time-shares were sold to consumers in weekly intervals for periods of twenty-five years. This arrangement continued with Modern marketing the right to use time-share interests through approximately October 31, 1979. Modern was employed by Defendants solely for the purpose of staffing the sales office and marketing the time-sharing club memberships in the units to the general public.

A person desiring to purchase a time-sharing club membership at the Resort made an application to join, and became a member of the Resort. A membership application could be declined for reasons other than non-payment. Each new member agreed to pay an initiation fee and annual dues. A member could have all of his rights and privileges under the club membership agreement terminated for failure to pay those dues. The benefits of the club were denoted as "privileges" in the Resort's rules and regulations. Those privileges could also be revoked for failure to comply with the rules, regulations and responsibilities of club membership. Al-

---

1. Modern's Third Amended Complaint contains thirteen (13) Counts, all of which relate to the time-share agreements except Count V in which Modern seeks to be indemnified for any state sales tax that may be due and owing.

2. Several procedural motions were not resolved prior to this Order and therefore, to clarify the record, this Court rules as follows:

   1. Defendants' motion to strike Plaintiff's motion for summary judgment pursuant to Plaintiff's failure to comply with Local Rule 10(J)(2), although well taken, is DENIED.

   2. Plaintiff's motion for leave to file an extended brief in support of its summary judgment is GRANTED, *nunc pro tunc*.

   3. Plaintiff's motion for leave to file a reply memorandum in support of its motion for summary judgment is GRANTED.

   4. Defendants' motion requesting status conference is DENIED.

though the time-share users were assigned a specific unit, the club reserved the right to transfer any member to another similarly sized accommodation. The member could not transfer the membership to any party other than family members without express approval of the club. The member would be assessed $50 for any such transfer.

Modern did not possess a real estate license while selling the time-shares. Modern collected fees from Defendants for selling the time-share memberships.

## II. CLAIMS OF THE PARTIES

Modern alleges that in 1979 when it left the project, Defendants purportedly agreed to continue to collect for Modern's benefit, those payments on the installment purchase contracts originally sold by Modern. Modern contends that Defendants breached their agreement by failing to pay the balance of the money due on certain installment contracts. Modern charges Defendants with conversion of this money. Modern seeks reimbursement in the amount of $314,000. Defendants oppose summary judgment on this claim on the basis that Modern was not properly licensed as a real estate entity during the time when the time-shares were originally sold.

Defendants have counterclaimed, once again contending that Modern was in violation of Florida law by selling interests "in or concerning" real property without a real estate broker's or salesman's license. Defendants seek to retrieve more than one million dollars in commissions that Modern collected for its services. Modern admits

that it was not a registered or licensed real estate broker but requests judgment in its favor contending that the sales of time-shares were not interests "in or concerning" real property and therefore, a license was not required.

## III. JURISDICTION

This Court has diversity jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1332.

## IV. DISCUSSION OF LAW: TIME SHARES AS INTERESTS IN REAL ESTATE

■ The threshold issue of both motions is whether Modern's sale of time-share interests in the Resort constituted an interest "in or concerning" real property and whether Modern's failure to register as a licensed broker or salesman violated the Florida Real Estate License Law, Fla.Stat. Sections 475.001, *et seq.*[3]

It is well settled in Florida, and in the Eleventh Circuit, that the intentions of the parties can be deduced from the language employed in an agreement. *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service,* 400 F.2d 465, 468 (5th Cir. 1968)[4]; *Hurley v. Werly,* 203 So.2d 530 (Fla. 2d DCA 1967); and *Pensacola Gas Co. v. A. Lotre's Sons & Co.,* 23 Fla. 368, 2 So. 609 (1887). Likewise, in cases dealing with time-share agreements, the language and terms of those agreements control. *See, Sombrero Reef Club, Inc. v. Allman,* 18 B.R. 612 (S.D.Fla.1982); *All Seasons Resorts, Inc. v. Abrams,* 127 Misc.2d 145, 485 N.Y.S.2d 673 (N.Y.Sup.Ct.1984), *rev'd,*

3. Fla.Stat. § 475.001 explains the purpose of regulating real property sales.

The Legislature finds that a significant number of real property transactions are facilitated by real estate brokers and salesmen and that it is necessary to assure the minimal competence of real estate practitioners in order to protect the public from potential economic loss; therefore, the Legislature deems it necessary in the interest of the public welfare to regulate real estate brokers, salesmen, and schools in this state.

Fla.Stat. § 475.01(1) states:

(f) "Real Property" or "real estate" means any interest or estate in land and any interest in business enterprises or business opportuni-

ties, including any assignment, leasehold, subleasehold, or mineral right....

During the period when the sales by Modern occurred, Florida did not regulate the sale of time-shares. The Florida Statutes were amended in 1981, requiring sellers of time-shares to be licensed real estate salespersons and classifying time-share sales as interests in real property. Fla.Stat. § 721.20.

4. Decisions of the Former Fifth Circuit filed prior to October 1, 1981 constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

109 A.D.2d 189, 491 N.Y.S.2d 516 (1985), *rev'd,* 68 N.Y.2d 81, 497 N.E.2d 33 (N.Y. 1986); *Cal–Am Corporation v. Department of Real Estate,* 104 Cal.App.3d 453, 163 Cal.Rptr. 729 (1980); *Kalins v. Commonwealth,* 92 Pa.Commonwealth 569, 500 A.2d 200 (1985); and *State of Nevada, Department of Commerce, Division of Real Estate v. Carriage House Associates,* 94 Nev. 707, 585 P.2d 1337 (1978).

Neither the Eleventh Circuit nor the Florida courts have definitively spoken on the issue of whether the sale of time-shares constitute interests in or concerning land and more importantly, whether real estate licenses were required prior to the enactment of the Florida statute in 1981. However, the cases mentioned above, although not binding, provide this Court with direction in determining this issue.

In particular, the element of exclusive use seems to be decisive. In the case of *Sombrero Reef Club, Inc. v. Allman, supra.,* the debtor in a bankruptcy proceeding obtained a declaratory judgment based upon the finding that time-share contracts were neither unexpired leases nor executory contracts for the sale of real property. The time-share contracts in *Sombrero* required payment of an initial fee, use of the accommodations and services for one or more weeks for at least twenty-five years and annual dues. The court's decision, however, rested on other factors. The time-share members

> did not purchase a right to occupy and use certain real estate for a certain period—a lease—but rather, purchased a qualified right to obtain accommodations of a certain quality within certain time periods. The "membership" which each purchased is more akin to an option to make reservations at a hotel on stated terms.

*Sombrero,* 18 B.R. at 619.

Similarly, in *All Seasons Resorts, Inc. v. Abrams, supra.,* the New York Court of Appeals reinstated the judgment of the trial court which had held that interests in a resort campground constituted licenses and not interests in real estate. In so concluding, the court relied upon the terms of the agreement whereby the purchasers were "entitled to a *non-exclusive* but non-specific use of the recreational facilities." *All Seasons Resorts,* 485 N.Y.S.2d at 675 (emphasis added).

The element of exclusivity was also considered controlling by the California Court of Appeals in *Cal–Am Corporation v. Department of Real Estate, supra.* There the court held that a seller of membership interests in condominium units had engaged in the sale of interests in real property. The court found that although the seller retained the right to specify which unit would be occupied, as here, the purchasers still had exclusive possessory interests *during* their annual periods.

In *Kalins v. Commonwealth, supra.,* the Commonwealth Court of Pennsylvania considered an order of the Pennsylvania State Real Estate Commission which determined that the petitioners violated the State's Real Estate Licensing and Registration Act when they sold time-share units. As in this case,[5] the state legislature amended its laws to include time-shares as real estate interests only after the alleged violations had occurred. Therefore, as here, the question of whether the legislature intended time-shares to be included in the definition of real estate was one of first impression. *Kalins,* 500 A.2d at 202. In *Kalins,* the time-share agreement gave the purchaser the right to occupy a unit for one week per year for twelve years. That privilege, however, did not extend to a particular unit, as the building's owner assigned the units. The owner was also allowed to determine which week within a season the purchaser could use the unit. *Kalins,* 500 A.2d at 203. Nevertheless, the Commonwealth Court of Pennsylvania, determined that the time-shares constituted sales of real estate because, once again, the time-share plan gave the purchaser *exclusive* possession for a specified term. *Kalins,* 500 A.2d at 204.

Unlike *Kalins,* in *State of Nevada v. Carriage House Associates, supra.,* the

5. See footnote 3, *supra.*

Supreme Court of Nevada decided that time-sharing "vacation licenses" were "mere contractual right[s] which [failed] to achieve the status of an interest in real property," *Nevada v. Carriage House*, 585 P.2d at 1339, as the purchasers were not entitled to reserve any specific suits, nor could the purchasers even secure a particular date. So too, their time-shares were not assignable.

Here, the purchasers of time-shares obtained a right to *exclusive* use and occupancy of a specific unit, even though the resort reserved the right to transfer that purchaser to another similar unit. That occupancy was for one week over a period of twenty-five years. Despite some restrictions on alienation, unlike the situation in *Nevada v. Carriage House*, the Resort purchasers could assign their units. Based upon these factors and the tests as enunciated by various state courts, this Court must conclude that here, the time-share purchasers did buy interests in real property. Hence, Modern's salespeople should have been licensed.[6]

## V. RELIEF REQUESTED: THE EQUITIES

■ In its Counterclaim, Defendants seek the return of over one million dollars it paid to Modern for its services in selling the time-shares. However, while it is clear that the time-share salespeople should have been licensed, it does not necessarily follow that Defendants are entitled to reimbursement of Modern's commissions.

Modern provided a valuable service to Defendants and received well-earned commissions during the period between 1975 to 1979. *See, In re Mona Joint Venture*, 88 B.R. 285 (Bankr.D.Haw.1988). The purpose of licensing is "to protect the public from unfit and incompetent practitioners." *See, Mona*, 88 B.R. at 297 and Fla.Stat. § 475.001 (footnote 3, *supra*). Here, the

Defendants have counterclaimed based solely upon Modern's failure to be licensed but have not alleged that they have suffered any harm as a result of Modern's failure to register its sales force. In the same vein, Defendants do not even allege that Modern provided inadequate services. Indeed, Defendants do not dispute that Modern carried out its time-share sales with the skill and responsibility that were expected. Nor have Defendants submitted any evidence or argument which would support a conclusion that they were members of a class which the licensing statute was designed to protect.

> [T]he purpose of the Real Estate Licensing Act is to protect the public from being forced to deal with dishonest or unscrupulous real estate operators, rather than to permit one party to gain unconscionable advantage by avoiding a just obligation which he has contracted to pay.

*Geneva Investment, Limited v. Trafalgar Developers, Ltd.*, 274 So.2d 581, 584 (Fla. 3rd DCA 1973) (citing *Pokress v. Tisch Florida Properties, Inc.*, 153 So.2d 346 (Fla. 3rd DCA 1963)).

These Defendants do not represent the interests of any time-share purchasers. Defendants paid Modern commissions as consideration for services which were completely and properly performed. As such, the Defendants are not members of the class which the licensing statute was designed to protect.[7] Defendants have not been harmed, but rather have been benefitted by Modern's actions, and no objection was raised until this suit was filed in 1985. Manifestly, this Court cannot approve Defendants' request for recovery of the previously paid commissions to Modern. Thus, although Modern's argument regarding licensing is in error, Modern is entitled to judgment in its favor on Defendants' Counterclaim and accordingly, Modern's motion

---

6. Defendants moved to preclude Modern's use of certain expert testimony pertaining to the licensing issue. Similarly, Defendants moved to strike affidavits in support of Modern's motion for summary. Both motions are GRANTED because the issue for decision is a question of law for which expert testimony is unnecessary.

7. Were this Court to grant recovery of the paid commissions, the time-share purchasers would not see those proceeds and therefore, the purpose of the licensing statute would not be vindicated.

for summary judgment on the Counterclaim must be granted.

 For the same reasons, even though Defendants' assertion regarding the license requirement is correct, such a position cannot defeat Modern's claim for commissions which were allegedly collected after the date of its termination but earned before that time. However, because the Court does not have before it a motion for summary judgment by Modern on its Complaint, and, as the Court reads the pleadings, the existence of an agreement between the parties concerning the post-termination commissions is in dispute, judgment in favor of Modern on the Complaint cannot be entered. Hence, the Court must simply deny Defendants' motion for partial summary judgment on the Complaint.

## VI. CONCLUSION

Based upon the foregoing, Defendants' motion for partial summary judgment on the Complaint is DENIED. Modern's motion for summary judgment on Defendants' Counterclaim is GRANTED and judgment is entered in favor of Modern on the Counterclaim.

DONE AND ORDERED.