# Pittsburgh Commercial Real Estate Inc. v. Baum Boulevard Investment LP

C.P. of Allegheny County, No. GD 13-3233

*Matthew F. Dolfi*, for plaintiff.
*Lawrence P. Lutz*, for defendant.

HERTZBERG, *J.*, Feb. 17, 2015—Defendant Warner Pacific Properties, LLC ("Warner" hereinafter), a real estate investor, and plaintiff Pittsburgh Commercial Real Estate, Inc. d/b/a Colliers International ("PCRE" hereinafter), a real estate broker, entered into an exclusive leasing agency contract[1] that contains this provision:

---

1. Warner actually entered into the contract with "Pittsburgh Commercial Real Estate, Inc. d/b/a NAI Pittsburgh Commercial," but shortly thereafter Pittsburgh Commercial Real Estate switched its global

In the event that: (i) at any time during the term of this agreement a lease of all or any portion of the premises, upon any terms acceptable to owner, shall be made with any tenant who was procured by NAI Pittsburgh; or (ii) within one hundred and eighty (180) days after the expiration or termination of this agreement a lease of all or any portion of the premises, upon any terms acceptable to owner, shall be made with any tenant to whom the premises were submitted by NAI Pittsburgh; then, and in either such event, owner agrees to pay to NAI Pittsburgh one (1) full commission computed and payable in accordance with the schedule of commission rates and conditions (the "schedule") on page 3 of 5 of this agreement. Within thirty (30) days following termination or expiration of this agreement, NAI Pittsburgh will provide to owner a list of prospects on which NAI Pittsburgh shall be protected for its commission. NAI Pittsurgh earns a commission on the lease of the premises during the listing period and thereafter, for a period of one hundred eighty (180) days, as provided herein by whomever made, including the owner. These same conditions will apply to those prospects who are not represented by another broker, and with whom owner enters into a lease, as a result of owner's effort. The protection period, in this event, shall also be one hundred eighty (180) days.

9/22/2014 Non-jury trial, Exhibit 1, ¶ no. 7. This exclusive

---

affiliation with NAI to one with Colliers International. Hence, in the contract the broker is referred to as "NAI" Pittsburgh.

agency contract dated February 1, 2011 is referred to hereinafter as "the contract." During the 180 days after the expiration of the contract, the University of Pittsburgh leased a portion of the premises, and PCRE sued Warner and its assignees[2] for the scheduled commission. The non-jury trial of the dispute was held before me, and my verdict was in favor of PCRE in the amount of $338,478. Warner and its assignees appealed my verdict to the Superior Court of Pennsylvania. This opinion addresses my perceptions of each of the alleged errors set forth in Warner's concise statement of matters complained of on appeal. *See* Pa. R.A. P. No. 1925(a).

Warner first contends that providing it a list of prospects within 30 days after expiration of the contract is a "condition precedent" to PCRE earning a commission. *See* concise statement of matters complained of on appeal ("concise statement" hereinafter), ¶ nos. 1 and 5. The contract between the parties expired on August 1, 2011 and PCRE admits the list of prospects was not provided to Warner until November 3, 2011. *See* concise statement, ¶ no. 11. However, under Pennsylvania law, an event mentioned in a contract will not be construed to be a "condition precedent" unless there is language in the contract expressly making that event a condition

---

2. The premises involved in the subject dispute are known as 5607-5625 and 5624 Baum Boulevard, City of Pittsburgh, which Warner agreed to purchase. Prior to closing on the purchase, Warner assigned its right to purchase the premises to defendant Baum Boulevard Investors, LP. Defendant Baum Boulevard Investors GP, LLC is the general partner of defendant Baum Boulevard Investors, LP. In this opinion, I refer to all three defendants as "Warner."

precedent. *See Wineburgh v Wineburgh*, 2002 PA Super 415, 816 A.2d 1105 at 1109. Hence, providing the prospects list within 30 days is a condition precedent if the contract has language conditioning Warner's obligation to pay the commission on PCRE providing the prospect list within 30 days. However, the contract simply says that PCRE will provide the list within 30 days after expiration of the contract, but does not say that the commission otherwise is forfeited.

In proposed conclusions of law filed by Warner shortly after trial, Warner contends that courts in other states "have determined, as a matter of law, that compliance with a contractual duty to provide a prospective purchaser list is a condition precedent to receipt of a commission." However, in each case cited by Warner, there was language in the contract expressing that the list had to be provided for the commission to be due[3]. Since there is no such language in the contract between Warner and PCRE, my decision that timely providing the prospect list was not a condition precedent was correct.

Warner next contends I made an error by denying its motion in limine to preclude evidence that defendants entered into leases with tenants procured by PCRE. *See* concise statement, ¶ no. 2. Warner's position is that the December 21, 2011 lease between the University

---

3. *See Glenlakes Realty Company v. Norwood*, 721 So. 2d 174 at 176 (Alabama Supreme Court 1998), *Love v. Gulyas*, 197 P. 2d 405 at 407, 87 Cal. App. 2d 608 at 610-611 (California District Court of Appeal 1948) and *Dracopoulas v. Rachal*, 411 S.W. 2d 719 at 721 (Texas Supreme Court 1967).

of Pittsburgh and Baum Boulevard Investors, LP is inadmissible because PCRE did not provide the prospect list within 30 days after the contract expired. Due to my determination that providing the prospect list within 30 days of contract expiration is not a condition precedent to PCRE earning a commission, the lease entered into during the 180 day "tail" period is highly relevant to both liability and damages. Therefore, my denial of Warner's motion in limine was correct.

Warner next contends that I violated the Pennsylvania Real Estate Licensing and Registration Act (63 P.S. §455.101 et seq., "RELRA" hereinafter) by awarding PCRE a commission under a contract with an allegedly indefinite duration. *See* concise statement, ¶ no. 3. While the "duration of the contract" and "a definite termination date" are required by RELRA (*see* 63 P.SA. §455.608a(1) and 455.604(a)(10)), the contract between PCRE and Warner spells out the duration and termination date in a clear manner. Paragraph no. 2 of the contract states that the term commences on the date of the contract and continues for 6 months, while paragraph no. 7, quoted above, adds an additional 180 days for leases with tenants to whom PCRE "submitted" the premises to during the initial 6 months. 9/22/2014 Non-jury trial Exhibit No. 1. Paragraph no. 7 even contains an extra emphasis on the fact that PCRE earns a commission during the listing period and the additional 180 day "tail" as it contains an all capital letters notice. Therefore, the award of a commission to PCRE does not violate RELRA's requirement that a specific

duration be set forth in the contract.

Warner also argues I made an error by failing to construe RELRA liberally to effect its protective purpose. *See* concise statement, ¶ no. 4, citing *Kalins v. Commonwealth State Real Estate Commission*, 92 Pa. Cmwlth. 569, 500 A.2d 200 (1985). The protection of RELRA is provided to "buyers and sellers of real estate, the most expensive item many persons ever buy or sell, from abuse by persons engaged in the business." *Id.*, 92 Pa. Cmwlth. 569, 577, 500 A.2d 200, 203. However, a liberal construction of RELRA to protect Warner cannot undo the clarity of the duration and termination date in the contract it signed. In any event, Warner is less needy of protection than the innocent victim of realtor abuse that the Legislature may have had in mind. Warner is a very sophisticated real estate investor involved in many commercial real estate transactions around the country, including approximately 11 developments involving the Aldi grocery store chain. *See* 9/22/2014 Non-jury trial transcript ("T." hereinafter), pp. 116-117 and 134. Warner's assignee did not close on the purchase of the premises until September 2, 2011, after which the likelihood of a tenant signing a lease increased. T., pp. 109 and 147-148. Out of a desire to do whatever was necessary to obtain a blue ribbon tenant, Warner intentionally allowed its building to be shown to the University of Pittsburgh by two different realtors, knowing if this prospective tenant signed a lease, both realtors would expect the commission. T., pp. 190 and 203-204. Warner then informed PCRE it was hiring

the other realtor thereby removing PCRE from making additional efforts to lease the premises during the time period when leasing was more likely because Warner's assignee had ownership. Thus, while Warner may not be owed a liberal construction of RELRA, I nevertheless gave it a liberal construction. Since the contract Warner signed was sufficiently clear to withstand scrutiny under that standard, I did not make the error that Warner alleges.

Warner next contends that I made an error by not construing the language of the contract against its drafter, PCRE. *See* concise statement, ¶ no. 6. A provision in a contract that is ambiguous will be construed against the drafter. *See Cordero v. Potomac Ins. Co. of Illinois*, 794 A.2d 897 at 900 (Pa. Super. 2002). As previously explained, the contract between PCRE and Warner was not ambiguous. Therefore, I was correct in not construing the contract against PCRE.

Warner next contends I made an error because the premises were not "submitted" to the University of Pittsburgh during the six month term of the contract. *See* concise statement, ¶ no. 7. The contract between PCRE and Warner does not define "submitted," but a typical dictionary definition of submit is "to commit (something) to the consideration or judgment of another." *The American Heritage Dictionary of the English Language* (4th ed. 2009). There was abundant, credible, unrebutted evidence produced during the trial that PCRE committed the premises to the consideration of the University of

Pittsburgh between February 1 and August 1 of 2011. The University of Pittsburgh first learned of the availability of the premises from an email describing them that PCRE sent. *See* T., pp. 71, 120, 234. On March 4, 2011 PCRE responded to an email from the University of Pittsburgh asking when the premises will be available. T., pp. 137-138. PCRE and Warner then spoke over the telephone with the University Pittsburgh on March 8, 2011. T., p. 139. On April 12, 2011 PCRE invited the University of Pittsburgh to tour the premises with Warner on April 14 or 15. The University of Pittsburgh could not tour at that time because a necessary representative's home had been hit by a tornado and she was relocating. T., pp. 139-140. On May 3, 2011 PCRE sent the University of Pittsburgh an email to arrange a viewing of the property with PCRE and a Warner representative who was coming to Pittsburgh. T., p. 141. On May 18, 2011 PCRE sent the University of Pittsburgh another email proposing a tour of the premises in the next week. T., pp. 141-142. PCRE spoke with the University of Pittsburgh over the telephone again on June 9, 2011, but the tour still could not be given because a necessary University of Pittsburgh representative was away on vacation. T., p. 142. In addition to this evidence that PCRE "submitted" or committed the premises to consideration by the University of Pittsburgh during the February 1 to August 1, 2011 term of the contract, here is an exchange between PCRE's counsel and the University of Pittsburgh's director of property management that occurred during the trial:

Q. So in March of 2011 he was submitting the property to you again?

A. Right....

T., p. 235. Thus, the University of Pittsburgh actually acknowledged the premises were "submitted" to it during the term of the contract. Therefore, I was correct in finding the premises were "submitted" to the University of Pittsburgh during the term of the contract.

Warner next contends I made an error by not considering that PCRE intentionally withheld the list of prospects beyond 30 days until after Warner signed a new listing agreement with a new broker. *See* concise statement, ¶ nos. 8 and 10. While PCRE was aware that it did not send the prospects list by August 31, 2011, its explanation for not doing so makes good business sense. PCRE felt it was on good terms with Warner and Warner was likely to sign another contract with PCRE, but delivery of a prospects list at that time would be interpreted by Warner to mean PCRE did not want another contract. *See* T., pp. 76 and 102. Once Warner's unexpected decision to hire a new broker was communicated to PCRE, it promptly provided the list of prospects. Warner incorrectly assumes I failed to consider that PCRE intentionally delayed delivery of the prospects list. I, in fact, did consider it, but found it of only minor significance since Warner already knew of PCRE's efforts to obtain the University of Pittsburgh as a tenant and that it would therefore be on any list of protected prospects provided by PCRE. Therefore, I correctly

considered PCRE's intentional delay in delivering the prospects list to have only minor significance.

Warner next contends that I made an error by failing to interpret "as provided herein" in paragraph no. 7 of the contract to refer to PCRE sending the list of prospects within 30 days. *See* concise statement, ¶ no. 9. The entire sentence which contains "as provided herein" is in all capital letters and reads as follows: PCRE "earns a commission on the lease of the premises during the listing period and thereafter, for a period of one hundred eighty (180) days, as provided herein by whomever made, including the owner." Since the subject of the sentence is how PCRE earns a commission, "as provided herein" is a reference to the language that obligates Warner to pay a commission if PCRE procures a tenant during the term of the contract or if a lease is made within 180 days afterwards with a tenant to whom the premises were submitted by PCRE. As explained above, the language of the sentence about providing the list of prospects does not say this is how the commission is earned or that earning a commission is contingent upon it. Thus, I correctly determined that "as provided herein" is not a reference to providing the prospect list.

Warner next argues that I made an error because my interpretation of the 30 day prospect list provision in paragraph no. 7 of the contract makes the provision meaningless. *See* concise statement, ¶ no. 10. If the tenant that leased the premises during the 180 day extension period were one Warner did not know PCRE was working

with, the fact that the prospect list was not timely provided would have been meaningful. Since, however, Warner was aware PCRE was working with the University of Pittsburgh, the failure to provide the list of prospects within 30 days after the term of the contract expired was not a material breach of the contract. In fact, all five of the factors that guide whether a breach of contract is material favor PCRE. *See International Diamond Importers, Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261 at 1271 (Pa. Super. 2012) citing Restatement (Second) of Contracts §241 (1981)[4]. PCRE would otherwise be deprived of the commission it reasonably expected and could not be adequately compensated for loss of the commission. While Warner will pay two brokers full commissions, it will not forfeit the seven year lease to the University of Pittsburgh and the $5.7 million in rent owed under the lease. T. pp. 67-69. Warner showed no indication it would cure its failure to perform. Finally, Warner's behavior does not comport with good faith and fair dealing because it knew PCRE submitted the premises to the University of Pittsburgh, then it allowed the premises to be shown to the University of Pittsburgh by both PCRE and the new

---

4. Here are the five factors as set forth in section 241 of the Restatement (Second) of Contracts: a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; b) the extent to which the injured party can be adequately compensated for that part of the benefit of which he will be deprived; c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; e) the extent to which the behavior of the party failing to perform or offer to perform comports which standards of good faith and fair dealing.

realtor, but it expected to pay a commission to only the new broker. Warner also allowed PCRE to work to find a tenant before its assignee had ownership, making it challenging for PCRE (T., pp. 109 and 147-148), then afterwards when obtaining a tenant is easier, handed leasing to the new broker. Hence, my decision that PCRE's breach of the 30 day tenant prospect list provision of the contract was not a material breach of the contract was correct.

Warner next contends that PCRE's inconsistent claims in the complaint, PCRE's November 3, 2012 letter containing the list of protected prospects and its testimony at trial demonstrate PCRE's belief that compliance with the 30 day deadline for delivery of the list was a condition precedent to earning a commission. *See* concise statement, ¶ no. 12. First, there is no inconsistency in the claims made by PCRE in the complaint, the letter (which is trial exhibit no. 5) and the trial testimony. PCRE consistently sets forth its understanding that it should continue expending efforts to obtain a tenant after the expiration of the 6 month term of the contract. Warner's contention that this indicates PCRE believed the 30 day deadline for delivering the protected prospect list was a condition precedent to earning a commission is perplexing. It makes no sense that PCRE would not send the list, continue to work to obtain a tenant after expiration of the 6 months but believe sending the list before the deadline was required for a commission. PCRE clearly expected a commission if its efforts produced a tenant, even if the list were delivered past the 30 day deadline. Hence, PCRE did not believe

compliance with the 30 day deadline was required for it to earn a commission.

Warner next contends I made an error by awarding PCRE a commission when it did not show the University of Pittsburgh the premises until after the expiration of the contract, it showed the University of Pittsburgh the Premises a second time without Warner's knowledge and it was not involved in the preparation of the lease between the University of Pittsburgh and Warner. *See* concise statement, ¶ no. 13. As set forth above, the contract language requires Warner to pay a commission if PCRE submitted the premises during the contract term to the tenant who ultimately signs a lease, and submit means to commit something to the consideration of another. I do not interpret this requirement that PCRE submit the premises to the University of Pittsburgh to mean PCRE had to take a University of Pittsburgh representative into the premises (or "show" the premises) during the term of the contract. By contacting the University of Pittsburgh multiple times about leasing the premises during the term of the contract (as described in detail above), PCRE "submitted" or committed the premises to consideration by the University of Pittsburgh. While no Pennsylvania caselaw could be located on the subject of what is required for a broker to "submit" a property to a tenant, courts in other jurisdictions have ruled that a property can be "submitted" without the broker ever showing it to the prospective tenant or purchaser. *See TEC Realtors, Inc. v. D&L Fairway Property Management, L.L.C.*, 42 So.3d

1116 (La. App. 1 Cir. 2010) and *Gardner v. Blahnik*, 832 S.W. 2d 919 (Mo. App. 1992). Similarly, PCRE may not have been able to prepare the lease that the University of Pittsburgh signed, but the fact that it submitted the property to the University of Pittsburgh during the term of the contract is what entitles it to the commission. Finally, the fact that Warner did not know in advance of PCRE's second showing of the premises to the University of Pittsburgh is not significant since PCRE submitted the premises to it during the contract term and it ultimately leased the premises. Therefore, I was correct in awarding PCRE a commission regardless of when it showed the premises or whether it prepared the lease.

Warner next contends that I made an error by finding that PCRE enlisted its best efforts as required by Paragraph no. 4 of the Contract. *See* concise statement, ¶ nos. 14 and 20. At trial PCRE provided credible testimony that it used its best efforts to lease the premises. Warner's part owner, John Odell, provided no credible testimony at the trial as to PCRE failing to use its best efforts. His primary complaint was that PCRE's second showing of the premises to the University of Pittsburgh, which occurred after the contract term expired, "was a negative showing." T., p. 194. However, what was negative about this showing resulted from distracting and disruptive construction activity and PCRE's inability to answer questions. Since Warner was in charge of construction and had not given PCRE any "ammunition" or information for responding to questions (T., p. 157), I did not find this second showing

an appropriate way to evaluate whether PCRE enlisted its best efforts. The credible evidence being that PCRE did use its best efforts, my finding was correct.

Warner next argues I made an error by finding Baum Boulevard Investors, LP and Baum Boulevard Investors GP, LLC liable when they were not parties to the contract. *See* concise statement, ¶ no. 15. However, paragraph no. 13 of the contract states that it is binding on the parties' assigns. Since Baum Boulevard Investors, LP was assigned Warner's right to purchase the property and acted as Warner's agent (*see* Complaint, ¶ no. 21, Answer and T., p. 213), Baum Boulevard Investors, LP became liable for the commission as did its general partner, Baum Boulevard Investors GP, LLC. Therefore, I was correct in finding those parties were liable.

Warner's next contention is that I made an error by "failing to consider the parties' statements and actions prior and subsequent to the execution of the 2011 leasing agreement in ascertaining the parties' intentions." Concise statement, ¶ no. 16. This contention is too vague for me to respond to in any way but to say that it is incorrect.

Warner next argues that the court erred by failing to grant Warner's motions for a directed verdict and summary judgment. *See* concise statement, ¶ nos. 17 and 18. All issues raised in those motions have already been addressed above.

Warner next contends that I made an error by failing to find the contract is null and void because Warner did not

acquire the property. *See* concise statement, ¶ no. 19. While paragraph no. 14 of the contract states that it shall become null and void if Warner does not acquire the property, Warner had always contemplated that an assignee would acquire the property. T., pp. 212-213. Paragraph no. 14 of the contract therefore must be interpreted to mean that the contract will be null and void if Warner's assignee does not acquire the property. Since that is what happened, I was correct in not finding the contract was null and void. In any event, this issue was not raised during pre-trial proceedings or during the trial, therefore pursuant to Pa. R.C.P. No. 227.1(b), the issue is waived.

Warner next contends that I made an error "in determining that plaintiff was entitled to interest and attorneys' fees." Concise statement, ¶ no. 21. However, paragraph no. 12 of the contract clearly mandates 10% per annum interest, reasonable legal fees and other direct costs incurred by PCRE to collect the commission if Warner fails to pay it. Hence, my decision that PCRE was entitled to interest and attorney fees was correct.

Warner's final contention is that I made an error by awarding attorney fees pertaining to the Crazy Mocha lease because I did not award PCRE any commission from it. At trial, counsel for Warner did not object to PCRE's attorney invoices being admitted into evidence as long as he could comment on them in proposed findings of fact and conclusions of law. T., p. 161. Since the proposed findings of fact and conclusions of law that Warner thereafter filed did not comment on PCRE's attorney invoices, Warner has

waived its ability to claim any error in the award. In any event, PCRE's invoices totaled $47,790.61 but my award was $44,121.11, a reduction by more than the amount that could be attributed to the Crazy Mocha Lease. Hence, there was no error in the amount of the attorney fee award.