# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sara Ladd, Samantha Harris, : 
and Pocono Mountain Vacation : 
Properties, LLC, : 
               Petitioners : 
        : 
       v. : No. 321 M.D. 2017
        : Argued:  April 12, 2018
Real Estate Commission of the : 
Commonwealth of Pennsylvania : 
and Department of State (Bureau of : 
Professional and Occupational Affairs) : 
of the Commonwealth of Pennsylvania, : 
               Respondents : 


BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge


**OPINION BY JUDGE BROBSON**       **FILED:  June 4, 2018**

Before this Court in our original jurisdiction are the preliminary objections filed by the Pennsylvania Real Estate Commission (Commission) and the Pennsylvania Department of State, Bureau of Professional and Occupational Affairs (Bureau) (collectively, Commonwealth Respondents) to a petition for review filed by Sara Ladd (Ladd), Samantha Harris (Harris), and Pocono Mountain Vacation Properties, LLC, (collectively, Petitioners).  For the reasons set forth below, we sustain, in part, and overrule, in part, Commonwealth Respondents' preliminary objections.

In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that we

may draw from the averments. *Meier v. Maleski*, 648 A.2d 595, 600 (Pa. Cmwlth. 1994). The Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. *Id.* We may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on the claim, and we must resolve any doubt in favor of the petitioner. *Id.* "We review preliminary objections in the nature of a demurrer under the above guidelines and may sustain a demurrer only when a petitioner has failed to state a claim for which relief may be granted." *Armstrong Cty. Mem'l Hosp. v. Dep't of Pub. Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013).

With the above standard in mind, we accept as true the following allegations from the Petition for Review (Petition). Petitioner Ladd, a New Jersey resident, worked as a "short-term vacation property manager," providing services in the Pocono Mountains area of Pennsylvania. (Pet. at ¶ 1.) In 2009, Ladd began renting two "cottages" that she owns in Arrowhead Lake, Monroe County, Pennsylvania. (Pet. at ¶¶ 15-19.) Using prior experience with digital marketing and website maintenance, Ladd "developed an online system that kept the cottages consistently booked whenever she was away." (Pet. at ¶ 20.) After a few years successfully managing and renting her own properties, Ladd accepted the requests of other Arrowhead Lake property owners to assist with renting their properties. (Pet. at ¶ 21.) Petitioner Harris is one of the property owners who utilized Ladd's services to rent and manage her property. (Pet. at ¶ 7.)

In 2013, Ladd formed Pocono Mountain Vacation Properties, LLC (PMVP), a New Jersey limited liability company, to provide her services for properties in the Poconos. (Pet. at ¶ 22.) In 2016, Ladd launched the website for

2

PMVP. (Pet. at ¶ 23.) Ladd sought to "take the hassle out of short-term vacation rentals by handling all of the marketing and logistics that property owners would otherwise have to coordinate themselves." (Pet. at ¶ 25.) That included marketing the properties on the Internet, responding to inquiries, arranging cleaning services, managing the billing, and informing property owners of their tax burdens (*i.e.*, Pennsylvania's "hotel tax"). (Pet. at ¶¶ 27, 34.) Ladd mainly operated PMVP by laptop from her house in Hampton, New Jersey. (Pet. at ¶¶ 24, 40.)

Ladd credits her success to the distinction between her business model and that of a typical real estate broker. Whereas most real estate brokers need to coordinate numerous complex transactions simultaneously, Ladd is able to keep her clients' properties consistently booked and competently managed due to the small number of PMVP clients and PMVP's low operating costs. (Pet. at ¶¶ 36-40.) Ladd would be unable to provide such niche services if she were required to pay for a physical office space and salaried employees. (Pet. at ¶ 40.)

In January 2017, the Bureau contacted Ladd and informed her that she had been reported for the unlicensed practice of real estate in violation of the Real Estate Licensing and Registration Act (RELRA).[1] (Pet. at ¶ 60.) Upon review of RELRA, Ladd discovered that her property management services did, in fact, constitute the practice of real estate and that she needed a real estate broker's license to continue operating PMVP as she did before the Bureau contacted her. (Pet. at ¶¶ 61-62.) RELRA required Ladd to spend three years working for an established real estate broker, pass two exams, and set up a physical office in Pennsylvania in order to obtain a real estate broker's license. (Pet. at ¶ 62.) In order

---

[1] Act of February 19, 1980, P.L. 15, *as amended*, 63 P.S. §§ 455.101-.902.

to avoid the civil and criminal repercussions for violating RELRA, Ladd shut down her business. (Pet. at ¶¶ 67-68.)

Ladd alleges that RELRA's overly burdensome requirements have effectively precluded her from providing short-term rental management services in Pennsylvania. (Pet. at ¶ 72.) Because she had to shut down PMVP, Ladd "has been deprived of the stable, supplemental, home-based income that working as a property manager through PMVP provided and would have continued to provide into her retirement years." (Pet. at ¶ 74.) Petitioner Harris, upon hearing that Ladd could no longer manage her property, was forced to hire a licensed real estate broker. (Pet. at ¶ 71.) On her part, Harris alleges that she is aggrieved because her property has been rented out less consistently since Ladd shut down PMVP and that she prefers Ladd's services. (Pet. at ¶¶ 70, 71.) But for the RELRA licensing requirements, Harris would continue to benefit from Ladd's services and the "peace of mind that comes with continuing to work with somebody she knows and trusts." (Pet. at ¶ 79.)

Petitioners seek a declaration from this Court under the Declaratory Judgments Act[2] that RELRA, its implementing rules and regulations, and the practices and policies of the Bureau impose unconstitutional burdens on Ladd's ability to work as a short-term property manager. Petitioners allege that these burdens violate Ladd's right to pursue her chosen occupation under Article I, Section 1 of the Pennsylvania Constitution.[3] Petitioners also allege that precluding

---

[2] 42 Pa. C.S. §§ 7531-7541.

[3] Article I, Section 1 of the Pennsylvania Constitution provides:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and

Harris from availing herself of Ladd's services also violates Article I, Section 1. Petitioners further request that this Court permanently enjoin Commonwealth Respondents from enforcing RELRA against Ladd and other similarly situated individuals.

On August 17, 2017, Commonwealth Respondents filed preliminary objections. Commonwealth Respondents first object on the ground that Petitioners failed to plead an actual controversy. Commonwealth Respondents argue that Petitioners are not entitled to a declaratory judgment because the Commonwealth has taken no action against Ladd; thus, her concerns about future enforcement under RELRA are mere speculation. Second, Commonwealth Respondents object to Petitioners seeking declaratory judgment before exhausting their statutory remedies. Commonwealth Respondents argue that Petitioners cannot pursue their Petition without first procuring a final determination by the Commission. Commonwealth Respondents argue that Petitioners are required to exhaust administrative remedies even though they raise a constitutional challenge, because Petitioners are not challenging the constitutionality of RELRA as a whole. Commonwealth Respondents' third objection is in the nature of a demurrer, alleging that the Petition is legally insufficient. Commonwealth Respondents argue that RELRA does not violate Article I, Section 1 of the Pennsylvania Constitution, because it constitutes a valid exercise of the Commonwealth's police power and satisfies rational basis review. Finally, Commonwealth Respondents object to Petitioner Harris's involvement in the case. Commonwealth Respondents argue that Harris does not

---

liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. art. I, § 1.

5

have standing to challenge the RELRA requirements as they pertain to Ladd merely because she is unable to use Ladd as a real estate broker.

In response, Petitioners argue that there is a controversy ripe for judicial review, because the Petition challenges the constitutionality of applying RELRA to Ladd and because denying review would impose substantial hardships on Petitioners. Relatedly, in response to the argument that they must exhaust their administrative remedies, Petitioners cite to cases such as *Bayada Nurses, Inc. v. Department of Labor & Industry*, 8 A.3d 866 (Pa. 2010) and *Pennsylvania Independent Oil & Gas Association v. Department of Environmental Protection*, 135 A.3d 1118 (Pa. Cmwlth. 2015), *aff'd*, 161 A.3d 949 (Pa. 2017) (*PIOGA I*), where the courts have applied an exception to the exhaustion requirement. Regarding the Commonwealth Respondents' demurrer, which posits that the application of RELRA is constitutional, Petitioners first argue that they are not required to prove the merits of their constitutional claims at this stage in the litigation. Petitioners further argue that the application of RELRA to Ladd does not satisfy rational basis review. Specifically, Petitioners argue that RELRA is unconstitutional under the rational basis review that the Pennsylvania Supreme Court employed in *Nixon v. Commonwealth*, 839 A.2d 277 (Pa. 2003). Finally, Petitioners argue that Petitioner Harris has standing, because she had a pre-existing relationship with Ladd, thus differentiating her from anyone else who cannot utilize Ladd's services.

Commonwealth Respondents' first two objections—ripeness and failure to exhaust administrative remedies—are frequently invoked simultaneously in cases such as this one, where a party facing the prospect of enforcement by a Commonwealth agency seeks pre-enforcement review in this Court's original

6

jurisdiction. Though these two doctrines overlap, they are also distinct. "While ripeness arises from a concern not to become involved in abstract disputes, exhaustion is concerned with agency autonomy, and the desire that parties resort to the administrative process so as to ensure that agency decision making is not unduly disrupted." *Bayada*, 8 A.3d at 875. Despite their distinction, both doctrines involve the overarching issue of the propriety of this Court's pre-enforcement review of Petitioners' challenge to the application of RELRA to Ladd. Thus, Commonwealth Respondents' first two objections require us to determine the applicability of the so-called *Arsenal Coal* exception.

In *Arsenal Coal Company v. Department of Environmental Resources*, 477 A.2d 1333 (Pa. 1984), several coal mine operators sought an injunction from this Court in our original jurisdiction to prevent the Department of Environmental Resources from enforcing allegedly unlawful regulations adopted by the Environmental Quality Board. This Court determined that the coal mine operators failed to exhaust their administrative remedies and, as a result, this Court lacked jurisdiction to review the matter. On appeal, however, the Pennsylvania Supreme Court reversed. The Supreme Court determined that the impact of the regulations was "sufficiently direct and immediate" to warrant pre-enforcement judicial review. *Arsenal Coal*, 477 A.2d at 1340. The Supreme Court explained that, accepting as true the allegations in the petition for review, the coal mine operators faced substantial sanctions for noncompliance with the regulations, or a costly and inefficient procedure if they chose to comply with the regulations. The Supreme Court also explained that the alternative proposed by the Department of Environmental Resources—challenging the regulations after enforcement through a lengthy administrative challenge—would leave the mine operators with "ongoing

7

uncertainty in the day[-]to[-]day business operations of an industry which the General Assembly clearly intended to protect from unnecessary upheaval." *Id.* The Supreme Court thus determined that this Court erred in declining jurisdiction for the coal mine operators' challenge to the regulatory scheme. Following *Arsenal Coal*, "[w]here the effect of the challenged regulations upon the industry regulated is direct and immediate, the hardship thus presented suffices to establish the justiciability of the challenge in advance of enforcement." *Id.* at 1339.

In support of their pre-enforcement challenge, Petitioners cite to *Bayada Nurses* and *PIOGA I*, where the Supreme Court and this Court, respectively, applied the *Arsenal Coal* exception. In *Bayada Nurses*, the Pennsylvania Supreme Court held that an at-home health services company could challenge the Department of Labor and Industry's interpretation of an exemption under The Minimum Wage Act of 1986[4] prior to enforcement by the Commonwealth under that statute. *Bayada Nurses*, 8 A.3d at 876.[5] Likewise, in *PIOGA I*, this Court held that the members of a trade association were not required to exhaust their administrative remedies and that the association could seek pre-enforcement declaratory judgment and injunctive relief under the Declaratory Judgments Act in its challenge to a permit application process. *PIOGA I*, 135 A.3d at 1129-30.

We agree with Petitioners that there is a justiciable controversy in the instant matter under the *Arsenal Coal* exception. Like in *Arsenal Coal* and its

---

[4] Act of January 17, 1968, P.L. 11, *as amended*, 43 P.S. §§ 333.101-.115.

[5] The Supreme Court also emphasized the broad right to relief under the Declaratory Judgments Act. *Bayada Nurses*, 8 A.3d at 876. The purpose of the Declaratory Judgments Act is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and [the Declaratory Judgments Act] is to be liberally construed and administered." 42 Pa. C.S. § 7541(a). In *Bayada Nurses*, the Supreme Court explained that the Declaratory Judgments Act "certainly embraces the type of dispute[s]" that fall within the ambit of *Arsenal Coal*. *Bayada Nurses*, 8 A.3d at 876.

progeny, Ladd faces sanctions for noncompliance with RELRA or the substantial cost and lengthy administrative process if she acquiesces to RELRA's requirements. The effect of the licensing requirements on Ladd under RELRA, therefore, is sufficiently "direct and immediate" to warrant justiciability in advance of enforcement. *See Arsenal Coal*, 477 A.2d at 1339. Pre-enforcement review of the application of RELRA's licensing requirements to Ladd in this Court's original jurisdiction is proper.

Moreover, Commonwealth Respondents make no attempt to distinguish the instant dispute from *Arsenal Coal* or its progeny. Instead, Commonwealth Respondents liken this case to *Morrison v. State Board of Medicine*, 618 A.2d 1098 (Pa. Cmwlth. 1992), and *Linesville PA VFW Post 7842 v. Commonwealth* (Pa. Cmwlth., No. 337 M.D. 2015, filed February 5, 2016) (Colins, J.).[6] In *Morrison*, a physician sought a declaration that she is approved to use a prayer and spiritual treatment program in the course of her medical practice. *Morrison*, 618 A.2d at 1098. We held that there was no justiciable case or controversy because there was no threat to the physician's ability to practice medicine or indication that her license was in jeopardy. *Id.* at 1101. In *Linesville*, aspiring gaming organizations sought a declaration from this Court that their plans to use certain gaming equipment to conduct raffles complied with state law. *Linesville*, slip op. at 5-6. Like in *Morrison*, Senior Judge Colins determined that the potential injury was not sufficiently direct or immediate because the aspiring gaming organizations had taken no concrete steps to conduct raffles and instead only alleged a desire to purchase such equipment. *Id.*, slip op. at 9. Moreover, Senior

---

[6] Section 414(b) of the Commonwealth Court Internal Operating Procedures provides: "A single-judge opinion of this court, even if reported, shall be cited only for its persuasive value, not as a binding precedent." 210 Pa. Code § 69.414(b).

9

Judge Colins differentiated the dispute in *Linesville* from *Arsenal Coal* in that there was no indication that any Commonwealth party took a position regarding the equipment for electronic raffles that could adversely affect the aspiring gaming organizations, even if they did purchase such equipment. *Id.*, slip op. at 12. Here, Ladd faces the direct and immediate price of compliance with RELRA or sanctions for noncompliance. The harm is more direct and immediate than that in *Morrison* or *Linesville*.

Commonwealth Respondents next object on the ground that even accepting the allegations in the Petition as true, Petitioners cannot prevail on their constitutional challenge because RELRA and its application to Ladd are constitutional. Regarding this preliminary objection in the nature of a demurrer, Commonwealth Respondents argue that the application of RELRA to Ladd is subject to rational basis review. Commonwealth Respondents contend that RELRA is merely a professional licensing scheme, one within the Commonwealth's general police powers. The Pennsylvania Supreme Court has explained that Article I, Section 1 protects both fundamental rights—like the right to marry and procreate—which warrant the protection of strict scrutiny review, as well as other rights, which are "undeniably important" but not fundamental. *Nixon*, 839 A.2d at 287. The right to pursue a lawful occupation is one of the non-fundamental rights guaranteed under Article 1, Section 1. *Id.* at 288. A law that restricts the right to pursue a lawful occupation is subject to rational basis review. *Id.*

While Commonwealth Respondents contend that RELRA's licensing requirements satisfy rational basis, Petitioners argue in response that RELRA is unconstitutional under the version of rational basis that the Pennsylvania Supreme

10

Court utilized in *Nixon*. Initially, we agree that *Nixon* requires a somewhat heightened rational basis review, which the Supreme Court has termed the "*Gambone* rational basis test." *Id.* at 289. Under the *Gambone* rational basis test, a law that restricts the right to pursue a lawful occupation "must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained." *Id.* at 287 (quoting *Gambone v. Cmwlth.*, 101 A.2d 634, 637 (Pa. 1954)).

Despite the heightened nature of the *Gambone* rational basis test, we agree with Commonwealth Respondents that the licensing scheme under RELRA is constitutional. The primary purpose of RELRA's licensing requirements is "to protect buyers and sellers of real estate, the most expensive item many persons ever buy or sell, from abuse by persons engaged in the business." *Kalins v. State Real Estate Comm'n*, 500 A.2d 200, 203 (Pa. Cmwlth. 1985).[7] Prerequisites to practicing a certain profession, such as a professional license, can be seen across many career fields. We would no sooner obviate the requirement for a professional engaging in the practice of real estate to hold a license than we would obviate the licensure requirement for an attorney, physical therapist, or any other professional, merely because they have limited clients or only practice part of the year. Were this Court to accept Petitioners' argument, we would effectively upend the legitimacy of any requirement by the Commonwealth for a professional license. State-mandated licensing requirements serve to ensure competence of professionals in given fields.

_____

[7] While the General Assembly has modified RELRA since our decision in *Kalins*, we agree with the Superior Court's assessment that "none of these modifications in any way altered the underlying purpose of [RELRA] which is to protect the public from abuse by those who are engaged in the business of trading real estate." *Meyer v. Gwynedd Dev. Grp., Inc.*, 756 A.2d 67, 69 n.2 (Pa. Super. 2000).

11

Petitioners do not cite to any case, nor is this Court aware of any, in which a Pennsylvania court has determined that a license requirement becomes unreasonable or oppressive for individuals who provide professional services, *like the services Petitioners admit Ladd provided*, but in a limited fashion. Moreover, RELRA bears a real and substantial relationship to the interest in protecting from abuse buyers and sellers of real estate and is similar to licensing requirements in other fields. The application of RELRA's licensing requirements to Ladd, therefore, satisfies the *Gambone* rational basis test.

We understand that Ladd believes RELRA's licensing requirements to be unduly burdensome given the small volume of real estate practice she conducted. We agree that, were Ladd to elect to comply with RELRA's requirements, she would face greater burdens in proportion to her real estate practice than those faced by a typical real estate broker who, for example, exclusively sells houses and does so year-round. The Pennsylvania Constitution, however, does not require the General Assembly to establish a tiered system for every profession that it regulates in order to account for different volumes of work performed. Ladd likely shares her frustration with any other person who aspires to work minimally in a given field but feels the prerequisites for that field are too onerous. Despite the reasonableness of her frustration, we are still compelled to uphold the will of the General Assembly in policing professionals, so long as the regulatory scheme satisfies the *Gambone* rational basis test. Here, it does.

The Pennsylvania Supreme Court's decision in *Nixon* and its progeny do not require a different result. In *Nixon*, the Supreme Court reviewed the constitutional challenge to amendments to the Older Adults Protective Services Act,[8]

---

[8] Act of November 6, 1987, P.L. 381, *as amended*, 35 P.S. §§ 10225.101-.5102.

12

which became effective in June 1998. The result of the amendments was to "prohibit the employment of convicted criminals who were not then working in a covered facility or who had obtained a new job in a covered facility less than a year before the effective date" of the amendments (*i.e.*, June 1997). *Nixon*, 839 A.2d at 288. The amendments did not apply, however, to formerly convicted individuals who held their position for more than a year before the effective date of the amendments. The Supreme Court explained that, if the state interest was to protect the elderly, disabled, and infirm, the distinction between formerly convicted caretakers that held their job before June 1997 and those that did not lacked a "real and substantial relationship" with that interest. *Id.* at 289. The Supreme Court thus held that the amendments failed the *Gambone* rational basis test.

In the aftermath of *Nixon*, this Court has held that blanket bans on formerly convicted individuals—particularly where some, but not all former criminals face such a consequence—do not satisfy the *Gambone* rational basis test. *See Peake v. Cmwlth.*, 132 A.3d 506 (Pa. Cmwlth. 2015) (holding lifetime ban for individuals convicted of certain offenses from working in elder care violated due process); *see also Warren Cty. Human Servs. v. State Civil Serv. Comm'n (Roberts)*, 844 A.2d 70 (Pa. Cmwlth.), *appeal denied*, 863 A.2d 1152 (Pa. 2004) (holding lifetime ban for individuals convicted of certain offenses from working in child care violated due process).

Petitioners' attempts to analogize the matter now before this Court to *Nixon* and its progeny are unpersuasive. Rather than a blanket ban on certain individuals from working as real estate brokers, RELRA merely requires a real estate broker's license prior to engaging in the practice of real estate. *See Reisinger v. State Bd. of Med. Educ. & Licensure*, 399 A.2d 1160, 1165 (Pa. Cmwlth. 1979) (noting

13

that, in denying petitioner license, the State Board of Medical Education and Licensure "[was] not prohibiting the practice of Naturopathy but merely assuring that those who practice it [were] medically competent to do so"). *Nixon*, therefore, is inapposite. Because RELRA merely establishes the prerequisites to engaging in the practice of real estate, *Nixon* does not compel a determination that RELRA violates due process.

Accordingly, we sustain, in part, and overrule, in part, Commonwealth Respondents' preliminary objections and dismiss with prejudice Petitioners' Petition.[9]

P. KEVIN BROBSON, Judge

---

[9] Because Petitioners are unable to succeed on the constitutional challenge of the application of RELRA's licensing requirements to Ladd, we need not reach a determination on Commonwealth Respondents' final preliminary objection, pertaining to Harris's standing in this matter.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sara Ladd, Samantha Harris, :
and Pocono Mountain Vacation :
Properties, LLC, :
                 Petitioners :
                           :
              v. : No. 321 M.D. 2017
                       :
Real Estate Commission of the :
Commonwealth of Pennsylvania :
and Department of State (Bureau of :
Professional and Occupational Affairs) :
of the Commonwealth of Pennsylvania, :
               Respondents :

# O R D E R

AND NOW, this 4th day of June, 2018, the preliminary objections by the Pennsylvania Real Estate Commission and the Pennsylvania Department of State, Bureau of Professional and Occupational Affairs to the petition for review filed by Sara Ladd, Samantha Harris, and Pocono Mountain Vacation Properties, LLC, are OVERRULED, in part, and SUSTAINED, in part. The preliminary objections based on failure to plead an actual controversy and failure to exhaust administrative remedies are OVERRULED. The preliminary objection based on demurrer is SUSTAINED, and the petition for review is DISMISSED with prejudice.

                                        _____

                                        P. KEVIN BROBSON, Judge