# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sara Ladd, Samantha Harris, and Pocono Mountain Vacation Properties, LLC, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 321 M.D. 2017 |
| | : | Argued: June 7, 2021 |
| Real Estate Commission of the Commonwealth of Pennsylvania and Department of State (Bureau of Professional and Occupational Affairs) of the Commonwealth of Pennsylvania, | : | |
| Respondents | : | |

BEFORE:  HONORABLE P. KEVIN BROBSON, President Judge
HONORABLE J. ANDREW CROMPTON, Judge (P.)
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY PRESIDENT JUDGE BROBSON**          FILED:  December 22, 2021

## I.  INTRODUCTION

This original jurisdiction matter returns to us on remand from the Pennsylvania Supreme Court.  In *Ladd v. Real Estate Commission*, 230 A.3d 1096 (Pa. 2020) (*Ladd II*), the Supreme Court, applying the heightened rational basis test first articulated in *Gambone v. Commonwealth*, 101 A.2d 634 (Pa. 1954), held that the allegations set forth in Petitioners' petition for review (Petition) presented a colorable claim that it is unconstitutional to apply the broker licensing requirements in the Real Estate Licensing and Registration Act (RELRA)[1] to Petitioner Sara Ladd

---

[1] Act of February 19, 1980, P.L. 15, *as amended*, 63 P.S. §§ 455.101-.902.

(Ladd) and her business as a "short-term vacation property manager." *Ladd II*, 230 A.3d at 1115 n.19, 1116. In so doing, the Supreme Court reversed this Court's dismissal of the Petition on a demurrer and remanded the matter to this Court for further proceedings.

Following a period of discovery, the matter is again before the Court, this time on cross-applications for summary relief. In addition, Petitioners have filed a separate application, asking this Court to strike as hearsay a document that Respondents Pennsylvania State Real Estate Commission (Commission) and Pennsylvania Department of State, Bureau of Professional and Occupational Affairs (BPOA) (collectively, Respondents) filed in support of their application for summary relief. For the reasons set forth below, genuine issues of material fact prevent this Court from granting summary relief to either party. Accordingly, we will deny the cross-applications for summary relief and dismiss the application to strike as moot.

## II. BACKGROUND

### A. Statutory Framework

As recently articulated by the Supreme Court in *Ladd II*, the legislative purpose of RELRA is to protect the public from fraudulent conduct by those that engage in the business of trading real estate. *Ladd II*, 230 A.3d at 1110-11. Relevant here are RELRA's provisions relating to brokers. The statute defines a "broker" as follows:

> Any person who, for another and for a fee, commission or other valuable consideration:
>
> > (1)    negotiates with or aids any person in locating or obtaining for purchase, lease or an acquisition of interest in any real estate;

2

(2)　negotiates the listing, sale, purchase, exchange, lease, time share and similarly designated interests, financing or option for any real estate;

(3)　manages any real estate;

(4)　represents himself to be a real estate consultant, counsellor, agent or finder;

(5)　undertakes to promote the sale, exchange, purchase or rental of real estate; Provided, however, [t]hat this provision shall not include any person whose main business is that of advertising, promotion or public relations;

(5.1)　undertakes to perform a comparative market analysis; or

(6)　attempts to perform any of the above acts.

Section 201 of RELRA, 63 P.S. § 455.201. RELRA makes it unlawful for any person to act as a broker in the Commonwealth without first being licensed or registered under the law. Section 301 of RELRA, 63 P.S. § 455.301. There are, however, eleven categories of persons excluded from RELRA's licensing requirements. Section 304 of RELRA, 63 P.S. § 455.304.

Before applying for a broker's license, a prospective applicant must take and pass a broker's license exam. Section 511 of RELRA, 63 P.S. § 455.511. To be eligible to sit for the exam, the prospective applicant must meet the following qualifications: (1) be at least 21 years of age; (2) be a high school graduate or its equivalent; (3) have completed 240 hours of real estate instruction as prescribed by the Commission; and (4) have at least 3 years of experience as a licensed real estate salesperson or the equivalent thereof. *Id.* Upon satisfying these requirements and qualifications, the prospective applicant may apply to BPOA for a broker's license. Section 512 of RELRA, 63 P.S. § 455.512. Each licensed broker must maintain a fixed office within the Commonwealth, which is designated on the broker's license. Section 601(a) of RELRA, 63 P.S. § 455.601(a). If a broker desires to maintain

3

more than one office, the broker must obtain a separate license for each location. Section 601(b) of RELRA, 63 P.S. § 455.601(b).

## B. Petition and *Ladd II*

Petitioners include Ladd, Samantha Harris (Harris), who is one of Ladd's clients, and Pocono Mountain Vacation Properties, LLC (PMVP), Ladd's New Jersey-domiciled business. On July 17, 2017, Petitioners filed their Petition with this Court, seeking both declaratory and permanent injunctive relief. In their Petition, Petitioners allege that Ladd is in the business of managing short-term vacation rentals in the Pocono Mountains, which Petitioners define as "rentals for periods of fewer than thirty days." (Pet. ¶ 2 n.1.) Nonetheless, Petitioners allege that since starting PMVP, most of Ladd's services "have involved . . . rentals for periods of just a few days at a time . . . at rates of just a few hundred dollars at a time." (*Id.* ¶¶ 31-32.) Ladd runs her business almost exclusively from her home in New Jersey. (*Id.* ¶ 24.)

Petitioners allege that through her business, Ladd handles all of the marketing and logistics for property owners who wish to rent out their properties in the Pocono Mountains. (*Id.* ¶ 25.) Her clients execute a property management contract, which sets forth the terms of Ladd's arrangement with her clients, including the scope of the services that will be provided and the clients' obligations in return. (*Id.* ¶ 26.) Petitioners did not attach a copy of the property management contract to their Petition. They allege, however, that Ladd's "typical[]" services include, "but are not limited to:"

> a. Serving as an independent contractor only for the property owner, with complete exclusion from the contractual relationship between the owner and each renter;

4

b. Marketing the owner's property on the Internet—chiefly, on platforms like her own website, Airbnb, HomeAway, FlipKey, and VRBO;

c. Responding to all online inquiries and coordinating all bookings based on a pre-approved list of openings provided by the owner;

d. Handling all billing, which can include accepting rental payments and security deposits, subtracting administrative costs and her own commissions, refunding security deposits, and remitting payments to the owners; and

e. Facilitating cleanings of the property between renters.

(*Id.* ¶ 27.) Petitioners allege that, in return, the clients incur the following obligations:

a. Providing [Ladd] with a rental contract that will constitute the exclusive terms of the arrangement between the property owner and each renter;

b. Providing [Ladd] with a list of dates that she is allowed to book the property over the next twelve months[] and acknowledging that dates not specifically reserved by the property owner upfront or submitted in writing at a later date are open for booking;

c. Not double-booking the property and notifying [Ladd] immediately if the property has been booked outside the scope of the arrangement;

d. Working with [Ladd] to establish rental rates with which the owner is comfortable;

e. Certifying that the property complies with all applicable laws, regulations, codes, and homeowners' association rules;

f. Paying any state or local sales tax imposed on short-term rentals, as well as any federal, state, and local taxes on rental proceeds;

g. Maintaining short-term rental liability insurance for the property in a minimum amount of $1,000,000;

h. Providing [Ladd] with a list of all house rules, instructions, and an inventory list for cleaners; and

i. Providing household supplies and items in accordance with how the property was advertised.

5

(*Id.* ¶ 28.) Since discovering in 2015 that Pennsylvania's "hotel tax" applied to her own property rentals, Ladd also advised her clients of their obligation to pay the tax on their rentals. (*Id.* ¶ 34.)

Petitioners allege, upon information and belief, that most residential brokers in Pennsylvania focus on selling homes and engaging in longer-term, more complex rental transactions. (*Id.* ¶¶ 35-38.) Ladd's focus on short-term vacation property management with only a few clients at once allows Ladd to keep her clients' properties more consistently booked. (*Id.* ¶ 39.) Her low overhead allows her to provide these services to her clients at a lower price. (*Id.* ¶ 40.)

Petitioners maintain that RELRA, as applied to Ladd's business, violates her substantive due process rights under Article I, Section 1 of the Pennsylvania Constitution,[2] which includes, within the right to possess property and pursue happiness, the right to pursue a chosen occupation, because it does not bear a real and substantial relationship to the protection of public health, safety, and welfare. *Ladd II*, 230 A.3d at 1108 (citing *Nixon v. Cmwlth.*, 839 A.2d 277, 288 (Pa. 2003)). In response to preliminary objections filed by Respondents, this Court, in *Ladd v. Real Estate Commission*, 187 A.3d 1070 (Pa. Cmwlth. 2018) (*Ladd I*), *reversed*, 230 A.3d 1096 (Pa. 2020), sustained a preliminary objection in the nature of a demurrer, concluding that RELRA's licensing scheme to protect buyers and sellers of real estate did not violate Ladd's rights under Article I, Section 1 of the

---

[2] Article I, Section 1 of the Pennsylvania Constitution provides:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursing their own happiness.

Pennsylvania Constitution. *Ladd I*, 187 A.3d at 1077-79. We dismissed the case, and Petitioners appealed. *Id*. at 1079.

In *Ladd II*, the Supreme Court reversed, holding, in a matter of first impression, that Ladd raised a colorable claim that RELRA's licensing scheme for brokers, as applied to Ladd's self-described services, is unconstitutional. *Ladd II*, 230 A.3d at 1116. In so doing, the Supreme Court recognized that "the right to choose a particular occupation, although 'undeniably important,' is not fundamental" or "absolute[,] and its exercise remains subject to the General Assembly's police powers, which it may exercise to preserve the public health, safety, and welfare." *Id.* at 1108. The Supreme Court further recognized that "[a] claim, like Ladd's, that a Pennsylvania statute violates substantive due process is subject to a 'means-end review[,]' where the court 'weigh[s] the rights infringed upon by the law against the interest sought to be achieved by it, and also scrutinize[s] the relationship between the law (the means) and that interest (the end).'" *Id.* (alterations in original) (quoting *Nixon*, 839 A.2d at 286-87). Given that the right to pursue a chosen occupation is not fundamental, the Supreme Court noted that it would conduct this means-end review by applying the rational basis test. *Id.*

Applying Pennsylvania's less deferential, "more restrictive," rational basis test, as first articulated in *Gambone*,[3] the Supreme Court asked two questions:

[3] As articulated in *Gambone*,

a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. The question whether any particular statutory provision is so related to the public good and so reasonable in the means it prescribes as to justify the exercise of the police power, is one for the

7

(1) whether RELRA's real estate broker licensing requirements—apprenticeship, instructional coursework and examinations, and brick and mortar location—are "'unreasonable, unduly oppressive, or patently beyond the necessities of the case[;]'" and (2) whether those requirements bear a "'real and substantial relation'" to the public interest they seek to advance *when applied to Ladd under the circumstances alleged in her [petition for review]*.

*Id.* at 1109 (alteration in original) (emphasis added) (quoting *Nixon*, 839 A.2d at 287 (quoting *Gambone*, 101 A.2d at 637)).[4]    While acknowledging the strong presumption that a statutory scheme is constitutional, the Supreme Court concluded that the allegations set forth in the Petition, when accepted as true, "present a colorable claim that RELRA's [broker licensing] requirements, as applied to [Ladd's] self-described services, are unreasonable, unduly oppressive[,] and patently beyond the necessities of the case" and that it is not clear whether those requirements "without a doubt . . . bear a real and substantial relation to the statutory goal of protecting the public" from "the fraudulent conduct of those 'engaged in the business of trading real estate.'" *Id.* at 1109-10, 1111, 1116 (quoting *Meyer v. Gwynedd Dev. Grp., Inc.*, 756 A.2d 67, 69 n.2 (Pa. Super. 2000)). The Supreme Court reasoned:

> Ladd is . . . faced with 315 hours of coursework (75 hours for her salesperson license and 240 for her broker license) in various topical areas that pertain to the work of traditional real estate brokers, but not to the services contemplated by her unique business model. The only

---

judgment, in the first instance, of the law-making branch of the government, but its final determination is for the courts.

*Gambone*, 101 A.2d at 637; *see also Shoul v. Dep't of Transp., Bureau of Driver Licensing*, 173 A.3d 669, 677-78 (Pa. 2017) (recognizing *Gambone* as setting more restrictive rational basis test under Pennsylvania Constitution than applied in due process challenges under United States Constitution).

[4] The Supreme Court expressly rejected our reading of *Nixon* and *Gambone* as applying only to regulatory regimes that imposed absolute bars or complete prohibitions on certain individuals engaging in a profession. *Ladd II*, 230 A.3d at 1110. In doing so, the Supreme Court held that the heightened *Gambone* rational basis test applied to any instance where the General Assembly exercises its police powers "to curtail a non-fundamental right." *Id.*

topics listed that are arguably related to her services are the general two-credit "Commission-developed or approved law course" and maximum four-credit "Real Estate Law" and "Residential Property Management" courses which satisfy at most 150 hours of the 315[-]hour requirement. In other words, RELRA requires Ladd to complete 165 hours of coursework geared toward educating individuals about large scale transactions including buying, selling, and leasing residential and commercial real estate. Further, because the broker coursework cannot be completed until the salesperson coursework and apprenticeship are satisfied, Ladd's burden is substantially increased because she would have to forego her own PMVP profits for three years while she completes the licensure requirements. Applying this metric to the allegations of Ladd's [petition for review], taken as true, we conclude she has asserted a colorable claim that RELRA's instructional requirements, as applied to her, are an unreasonable and unduly oppressive means to achieve the statutory objective of protecting consumers from the fraudulent practices of those "engaged in the business of trading real estate."

. . . RELRA imposes an apprenticeship and a brick[-]and[-]mortar office requirement in addition to an instructional coursework requirement, which obviously increases the economic burden. Considering both the quantity of non-relevant hours and the cost of completing those hours, . . . the three-year apprenticeship requirement would impose a substantial cost on Ladd; during that time she would ostensibly learn the traditional real estate trade, *e.g.*, completing transactions involving thousands, if not hundreds of thousands of dollars to buy, sell, or lease properties. But, this practical knowledge would be neither relevant nor directly applicable to a short-term vacation property management business involving rentals that last only a few days and cost only a few hundred dollars. Adding to the equation the lost opportunity cost of shuttering PMVP during the apprenticeship, we conclude Ladd has stated a claim that the broker license requirements are unreasonable, unduly oppressive and patently beyond the necessities of the case.

Similarly, we conclude the brick[-]and[-]mortar office requirement, as applied to Ladd's self-described business model, appears to be disproportionate to the government's interest in safeguarding the public from fraudulent practices by those who "trad[e] in real estate." According to Ladd, she performed her professional services solely online from her home in New Jersey . . . and a requirement that she obtain physical office space in Pennsylvania is tantamount to an excessive fee for entry into a profession. The

9

allegations of Ladd's [petition for review]—taken as true—indicate her business model is sustainable only because she can provide quality services with limited overhead . . . and requiring additional overhead, including rental or mortgage, taxes, insurance, and maintenance of a property does not further the statutory objectives of RELRA.

. . . .

We are further persuaded that it appears application of RELRA to Ladd is unconstitutional when we consider the fact that individuals who manage and facilitate rentals of lodging in apartment complexes and duplexes on behalf of their owners are completely exempt from the statute's broker licensing requirements . . . and those who manage and facilitate rentals in hotels do not fall under the terms of RELRA at all. It is clear Ladd's business model—as described in her [petition for review]—is more closely analogous to the services provided by these exempt individuals than to those of a broker, despite the fact that the statutory definition of "broker" technically catches Ladd in its net. Notably, Ladd routinely advised her clients they must comply with the Commonwealth's "hotel tax," . . . where "hotel" is defined as any form of lodging "available to the public for periods of time less than 30 days." Ladd's "short-term vacation rental" clients were subject to the hotel tax because their contracts involved "transient" uses of property only. Under the circumstances, Ladd asserts a colorable argument that it is unreasonable, unduly oppressive and patently beyond the necessities of the case . . . to exempt professions so closely analogous to her own while mandating her compliance with RELRA's onerous broker license requirements.

*Id.* at 1112-15 (emphasis omitted) (footnotes omitted) (citations omitted) (alteration in original). Given its conclusions and reasoning, the Supreme Court reversed our decision in *Ladd I* and remanded the matter to us for further proceedings pursuant to its opinion. *Id.* at 1116.

### III.  SUMMARY RELIEF STANDARD

"At any time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." Pa. R.A.P. 1532(b). Like motions for summary judgment, a motion for summary relief must be based on undisputed material facts

10

of record. *See Summit Sch., Inc. v. Dep't of Educ.*, 108 A.3d 192, 195-96 (Pa. Cmwlth. 2015). A court "must determine, based on the undisputed facts, whether 'either party has a clear right to the relief requested.'" *Id.* at 195 (quoting *Bell Atl.-Pa., Inc. v. Tpk. Comm'n*, 703 A.2d 589, 590 (Pa. Cmwlth. 1997), *aff'd*, 713 A.2d 96 (Pa. 1998)). "The moving party has the burden of proving the nonexistence of any genuine issue of fact." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 468-69 (Pa. 1979). "A material fact is one that directly affects the outcome of the case." *Dep't of Env't Prot. v. Delta Chems., Inc.*, 721 A.2d 411, 416 (Pa. Cmwlth. 1998) (en banc) (*Delta Chems.*); *see also Hosp. & Healthsystem Ass'n of Pa. v. Cmwlth.*, 77 A.3d 587, 602 (Pa. 2013) ("A fact is considered material if its resolution could affect the outcome of the case under the governing law.").

The Supreme Court has cautioned that when "the parties' disparate takes on the record and the interpretations they draw from it suggest[] there are disputed issues of material fact . . . when viewed in the light most favorable to . . . the non-moving party, [the court] should . . . preclude[] summary [relief]." *Bailets v. Pa. Tpk. Comm'n*, 123 A.3d 300, 307 (Pa. 2015). "In summary [relief] proceedings, . . . the court's function [is not] to determine facts[] but only to determine if a material issue of fact exists." *French v. United Parcel Serv.*, 547 A.2d 411, 415 (Pa. Super. 1988).[5] Finally, "[t]he facts which directly affect the outcome of the case are gleaned from considering the substantive law underlying the cause of action." *Delta Chems.*, 721 A.2d at 416.

---

[5] We are "not bound by the [Pennsylvania] Superior Court's precedents, although where persuasive, we are free to adopt the Superior Court's reasoning." *Wertz v. Chapman Twp.*, 709 A.2d 428, 433 n.8 (Pa. Cmwlth. 1998), *aff'd*, 741 A.2d 1272 (Pa. 1999).

## IV. DISCUSSION

### A. Petitioners' Application for Summary Relief

Petitioners argue that "the Supreme Court all but decided this case" in *Ladd II* and, because RELRA has not changed since the Supreme Court issued its decision and it is undisputed that Ladd only wants to manage short-term rentals online, the only thing left for this Court to do "is follow the Supreme Court's logic on the merits and declare RELRA unconstitutional as applied to [Ladd]." (Petitioners' Br. at 23-26.) More specifically, Petitioners contend that RELRA, as applied to Ladd, does not bear a "real and substantial relation" to its intended purpose of "protect[ing] the public from fraud by those engaged in the business of trading real estate" because RELRA's apprenticeship, coursework/examination, and brick-and-mortar office requirements are unrelated to Ladd's short-term rental business. (Petitioners' Br. at 24, 26-31 (quoting *Ladd II*, 230 A.3d at 1109, 1110).) Petitioners further contend that RELRA is unreasonable, unduly oppressive, and patently beyond the necessities of the case as applied to Ladd, because RELRA grants other brokers unchecked power over Ladd's ability to obtain a broker license, imposes economic burdens on Ladd by forcing her to spend years to learn mostly irrelevant information when she could be earning a living and requiring her to have a brick-and-mortar office in Pennsylvania, and exempts individuals "who manage and facilitate rentals of lodging in apartment complexes and duplexes" and individuals "who manage and facilitate rentals in hotels" from its requirements. (Petitioners' Br. at 32 (quoting *Ladd II*, 230 A.3d at 1114).) Petitioners maintain that the only material facts presented in this case are "RELRA's 'specific application to . . . short-term vacation property management services' and the 'economic burdens' RELRA imposes on [Ladd]" and that those facts are not in dispute. (Petitioners' Reply Br. at 4 (quoting

12

*Ladd II*, 230 A.3d at 1109, 1111-15).) In support thereof, Petitioners suggest that any facts of record relative to how Ladd may have conducted her business in the past—*e.g.*, participating in a few long-term rentals, advising a client on a property sale, and maintaining complete control over rental dates and rental rates—are essentially irrelevant to this Court's determination on summary relief because it is undisputed that Ladd only intends to manage short-term rentals in the future.

While we acknowledge that we are bound by the Supreme Court's decision in *Ladd II* and that we must apply the legal framework set forth therein to analyze whether it is unconstitutional to apply RELRA's broker licensing requirements to Ladd under the facts presented here, we do not agree with Petitioners that summary relief in their favor is appropriate at this time. Petitioners focus their argument entirely on the ways in which RELRA's broker licensing requirements are unrelated to its purpose of protecting the public from fraud when applied to short-term vacation property management and how RELRA's broker licensing requirements are unreasonable, unduly oppressive, or patently beyond the necessities of the case when applied to short-term vacation property management. In other words, Petitioners have essentially reiterated the potential problems with applying RELRA to short-term vacation property management that the Supreme Court identified in *Ladd II*. *See Ladd II*, 230 A.3d at 1112-15.

Petitioners fall short, however, by not demonstrating, through undisputed evidence of record, that Ladd's business model actually constitutes that of a "short-term vacation property manager," and the scope and limits of such a business. Petitioners baldly assert, without any citation to the record, that it is undisputed that Ladd "just wants to manage short-term rentals online." (Petitioners' Br. at 23.) At this stage of the proceedings, we are no longer required to "accept as true

13

[Petitioners'] allegation that [Ladd] is a short-term property manager where 'short-term' is defined as a period less than thirty days." *Ladd II*, 230 A.3d at 1109. Rather, to be entitled to summary relief, Petitioners must demonstrate "the nonexistence of any genuine issue of [material] fact." *Thompson Coal Co.*, 412 A.2d at 468-69. Petitioners have utterly failed in this regard and, instead, would like this Court to simply take Ladd at her word, without any factual support, that she intends to only manage short-term vacation rentals, whatever that encompasses. For these reasons, we must deny Petitioners' application for summary relief.

## B. Respondents' Application for Summary Relief

Respondents argue that the undisputed evidence of record demonstrates that RELRA's broker licensing requirements, as applied to Ladd, are not unreasonable or unduly oppressive and bear a real and substantial relation to protecting the public from fraud and, therefore, Respondents are entitled to summary relief. Respondents maintain that "[t]he Supreme Court's opinion is premised upon Petitioners' false representations that . . . Ladd engaged [in] simple internet 'marketing' for 'short[-]term vacation rentals' lasting thirty days or less[] and that she is not involved in leasing," when, in actuality, "Ladd, who has no training in law or real estate, . . . entered into complicated contractual relationships with her clients that gave her paramount control over their properties for an initial term of a year (with automatic renewal) and directly involved her in the leasing process." (Respondents' Br. at 20-21.) In support thereof, Respondents direct our attention to the following facts, which Respondents contend are undisputed: (1) Ladd maintained extensive control over her clients' properties and the leasing process pursuant to complicated property management contracts; (2) Ladd did not limit all of her clients' rental agreements to thirty days or less; (3) Ladd handled significant amounts of money on her clients'

14

behalf and that money may not have been placed into an escrow account; and (4) Ladd had serious disputes with two of her five clients. Respondents further maintain that, given the breadth of Ladd's vacation rental business, RELRA's coursework, apprenticeship, and brick-and-mortar office requirements are not unreasonable, burdensome, or unduly oppressive.

The parties here have advanced very different presentations of Ladd's vacation rental business. Petitioners maintain that Ladd "just wants to manage short-term rentals online" and that how Ladd may have managed her vacation rental business in the past has no bearing on her intention to manage only short-term, online rentals in the future. Respondents, on the other hand, essentially suggest that the evidence of record establishes that Ladd's business involved more than that of a "short-term vacation property manager." Frankly, given the parties' current positions, we are concerned that Ladd's self-described services are markedly different than what Petitioners described in their Petition and presented to the Supreme Court for the purposes of surviving preliminary objections.

Before we can apply the legal framework set forth by the Supreme Court in *Ladd II* to determine whether RELRA's broker licensing requirements, as applied to Ladd, violate Ladd's substantive due process rights under Article I, Section 1 of the Pennsylvania Constitution, we must have a clear view of the relevant facts, including the nature of Ladd's vacation rental business. As a result, we must conclude that genuine issues of material fact exist and deny Respondents' application for summary relief.[6]

---

[6] Given our disposition above, we also dismiss Petitioners' application to strike as moot. In the event that the parties continue to disagree over the admissibility of the document, Petitioners can make an appropriate objection prior to or at trial.

## V. CONCLUSION

Accordingly, we deny Petitioners' and Respondents' cross-applications for summary relief and dismiss Petitioners' application to strike inadmissible hearsay as moot.

_____
P. KEVIN BROBSON, President Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sara Ladd, Samantha Harris,                    :
and Pocono Mountain Vacation                   :
Properties, LLC,                               :
                            Petitioners         :
                                               :
            v.                                 :    No. 321 M.D. 2017
                                               :
Real Estate Commission of the                  :
Commonwealth of Pennsylvania                   :
and Department of State (Bureau                :
of Professional and Occupational               :
Affairs) of the Commonwealth of                :
Pennsylvania,                                  :
                            Respondents         :

# **O R D E R**

AND NOW, this 22nd day of December, 2021, Petitioners' and Respondents' cross-applications for summary relief are DENIED, and Petitioners' application to strike inadmissible hearsay is DISMISSED AS MOOT.

_____
P. KEVIN BROBSON, President Judge